# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| In re Matter of Truancy of: | No. 77032-2-I |
| A.J.L., DOB: 12/31/01 | |
| EVERETT SCHOOL DISTRICT, | |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| A.J.L.<br>DOB: 12/31/01, | FILED: May 14, 2018 |
| Appellant. | |

VERELLEN, J. — A.J.L. appeals a superior court truancy order, contending the superior court did not enter adequate findings to support the court's assertion of jurisdiction over the truancy. The school district petition, supported by an assistant principal's declaration under penalty of perjury, alleged that A.J.L. had 28 unexcused absences during the 2016-17 school year, that specific actions taken by the district had not been successful, and that court intervention and supervision were necessary. A superior court judge, on a motion to revise a commissioner's ruling, found by a preponderance of the evidence that the school district had taken appropriate steps to address the unexcused absences and that, based on the

result of the interventions that were put in place, court supervision is still necessary. We conclude those findings are adequate to assert jurisdiction consistent with RCW 28A.225.035.

A.J.L. also contends he was denied due process by virtue of his being at risk of detention under the statute in effect at his initial truancy hearing. He focuses on the lack of an evidentiary hearing. But A.J.L. and his parents received adequate notice of the hearing, his attorney was present at all hearings, he did not subpoena or call any witnesses to testify, and at the hearing on the motion to revise, the attorney was allowed to make an offer of proof of any objections or evidence he would have presented at the hearing before the court commissioner. A.J.L. does not establish that the procedures followed by the superior court presented a risk of erroneous deprivation of a liberty interest. And the district's legitimate interests outweigh the potential burdens of a mandatory evidentiary hearing for all initial truancy hearings. A.J.L. does not establish any due process violation.

Therefore, we affirm.

## FACTS

On February 1, 2017, the Everett School District filed a petition regarding truancy in Snohomish County Superior Court. The petition asked the court to assume jurisdiction over A.J.L. and issue an order compelling school attendance and other relief under RCW 28A.225.090.

The district filed the petition based on A.J.L.'s numerous absences within the school year. The petition listed 28 unexcused absences and set forth actions the district took to eliminate or reduce the absences, including contacting A.J.L.'s mother multiple times, holding a conference with A.J.L., entering into a behavior contract with A.J.L., conducting the Washington Assessment of the Risks and Needs of Students (WARNS), providing interventions consistent with A.J.L.'s WARNS profile, and referring A.J.L. to a community truancy board. The petition alleged that court intervention was necessary to help the district reduce the unexcused absences. The assistant principal, Doug Plucker, signed the petition under penalty of perjury.

On February 3, 2017, A.J.L.'s mother was served with a notice and summons to juvenile for truancy hearing. On February 7, the Snohomish County Public Defender Association filed a notice of limited appearance for A.J.L. and a request for discovery to the district. On February 27, Plucker delivered the petition and the notice and summons to A.J.L. On that same day, A.J.L., his mother, and Plucker signed a behavior contract to "clarify the school's attendance and behavior expectations, and to help establish systems that will help the student be successful at Everett High School."[1] A.J.L. was also referred to the local truancy board.

---

[1] Clerk's Papers (CP) at 107.

At the initial fact finding hearing on March 9, A.J.L., his mother, and his attorney all appeared and agreed to continue the hearing to April 20. The parties also agreed that A.J.L. would continue attending Everett High School while completing the intake at Sequoia High School. The order granting the continuance expressly directed A.J.L. and his parent to appear before the juvenile court on April 20, 2017.

At the April 20 hearing, A.J.L. was represented by his attorney. Neither A.J.L. nor a parent attended the hearing. The district was represented by non-attorney Erin Wilson.[2] The superior court commissioner found by a preponderance of the evidence there were facts sufficient to enter an order to abate truancy and entered findings and an order. The commissioner also checked a box indicating that A.J.L. was in default.

A.J.L.'s attorney moved to revise the commissioner's ruling. On revision, the Snohomish County Superior Court judge allowed A.J.L.'s attorney to make an offer of proof. The attorney acknowledged the absences were unexcused and listed a series of objections. The court denied the motion to revise.

A.J.L. appeals.

ANALYSIS

Generally, we review a truancy order to determine whether substantial evidence supports the superior court's findings of fact and if so, whether those

---

[2] RCW 28A.225.035(10) provides the court shall permit a school district representative who is not an attorney to represent the school district.

4

findings support the superior court's conclusions of law.[3] We review constitutional challenges de novo.[4]

## I. Statutory Findings

A court commissioner has "authority, and jurisdiction, concurrent with a juvenile court judge, to hear all cases under RCW 28A.225.030, 28A.225.090, and 28A.225.035 and to enter judgment and make orders with the same power, force, and effect as any judge of the juvenile court"[5] Any court commissioner decision is subject to revision by a superior court judge if a motion or demand is made within 10 days of the entry of the order or judgment by the court commissioner.[6] "On revision, the superior court [judge] reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner."[7] The judge "may issue his or her own independent factual findings and legal conclusions."[8] "Once the superior court [judge] makes a decision on revision, 'the appeal is from the superior court [judge's] decision, not the commissioner's.'"[9]

---

[3] State v. B.J.S., 140 Wn. App. 91, 97, 169 P.3d 34 (2007).

[4] Bellevue Sch. Dist. v. E.S., 171 Wn.2d 695, 702, 257 P.3d 570 (2011).

[5] RCW 28A.225.095.

[6] RCW 28A.225.095; RCW 2.24.050.

[7] State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004).

[8] Marriage of Lyle, 199 Wn. App. 629, 632-33, 398 P.3d 1225 (2017)

[9] Ramer, 151 Wn.2d at 113 (quoting State v. Hoffman, 115 Wn. App. 91, 101, 60 P.3d 1261 (2003)).

5

Here, the superior court judge denied A.J.L.'s motion for revision. The court's minute entry includes the judge's independent finding "by a preponderance of the evidence that the school district has taken steps as appropriate and based on those efforts, court supervision is still necessary."[10] Therefore, we limit our review to the superior court's order and findings.

A.J.L. argues the truancy order does not include the necessary statutory findings but provides no compelling authority that detailed findings are required for each of the underlying facts supporting the petition.

The petition for a civil truancy action under RCW 28A.225.030 shall consist of written notification to the court alleging that

> (a) The child has unexcused absences as described in RCW 28A.225.030(1) during the current school year;
>
> (b) Actions taken by the school district have not been successful in substantially reducing the child's absences from school; and
>
> (c) Court intervention and supervision are necessary to assist the school district or parent to reduce the child's absences from school.[11]

Additionally, the petition "shall set forth facts that support the allegations in this section" and provide information about the relief requested by the district.[12]

RCW 28A.225.035(12) provides:

> If the allegations in the petition are established by a preponderance of the evidence, the court shall grant the petition and enter an order

---

[10] CP at 33.

[11] RCW 28A.225.035(1).

[12] RCW 28A.225.035(3).

assuming jurisdiction to intervene for the period of time determined by the court, after considering the facts alleged in the petition and the circumstances of the juvenile, to most likely cause the juvenile to return to and remain in school while the juvenile is subject to this chapter. In no case may the order expire before the end of the school year in which it is entered.

Though RCW 28A.225.035(12) *does* require the court to consider "the facts alleged in the petition and the circumstances of the juvenile," the statute does not expressly require the court to enter findings as to each of the facts underlying the petition.

The petition alleged (1) A.J.L. had 28 unexcused absences, which exceeded the statutory threshold of 10 unexcused absences within the school year, (2) the district's actions had not been successful in substantially reducing A.J.L.'s absences, and (3) court intervention and supervision were necessary to assist the school district to reduce A.J.L.'s absences. The petition was signed under penalty of perjury by an assistant principal for the district.

The minute entry for the revision hearing expressly states, "The court finds by a preponderance of the evidence that the school district has taken steps as appropriate and[,] based on those efforts, court supervision is still necessary."[13]

Additionally, near the conclusion of the revision hearing, A.J.L.'s counsel expressly inquired:

---

[13] CP at 27.

[S]o is the court then finding by a preponderance of the evidence that the school district has established that it has taken steps . . . based on a WARMS assessment and implemented those steps, as appropriate, as the WARMS has recommended, and that based on the efforts that were taken and the interventions that were put in place, court supervision is still necessary?[14]

The court responded, "That is what I am finding at this time."[15]

The minute entry, combined with the court's verbal ruling, adequately memorialized the judge's independent finding that, by a preponderance of the evidence, the school district had taken appropriate steps to address the unexcused absences, and that based on the result of the interventions put in place, court supervision was still necessary. On the existing briefing, those findings are adequate to establish the court had authority to assert jurisdiction over the truancy of A.J.L. consistent with the requirements of RCW 28A.225.035.

*II. Due Process Concerns*

A.J.L. argues that rather than allowing a default judgment, "basic notions of due process"[16] required an evidentiary hearing so, for example, his attorney could cross-examine witnesses about the allegations in the petition. The provision in RCW 28A.225.035(8)(b) permitting a default judgment is not at issue. Here, the superior court judge conducted de novo review on revision and entered her own

---

[14] RP (May 17, 2017) at 41.

[15] Id.

[16] Appellant's Br. at 6.

8

findings, not based on a default. And, in any event, A.J.L. fails to establish that due process compels a mandatory evidentiary hearing at every initial truancy hearing.

A state may not deprive a person of "life, liberty, or property" without providing them with due process of law.[17] At minimum, due process requires a person be afforded notice and opportunity to be heard at a meaningful time and in a meaningful way.[18] "[D]ue process is flexible and calls for such procedural protections as the particular situation demands."[19] "The fundamental requirement of due process is the right to be heard at a meaningful time and in a meaningful manner."[20]

For purposes of this analysis, we balance the three Matthews v. Eldridge factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[21]

---

[17] U.S. CONST. amend. XIV, § 1.

[18] Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965).

[19] Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (alteration in original) (quoting Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972)).

[20] In re Dependency of R.L., 123 Wn. App. 215, 222, 98 P.3d 75 (2004) (citing id. at 333).

[21] 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).

*a. Private Interest*

A.J.L. contends his physical liberty was at stake at the initial truancy hearing because the statute in place at the time of the hearing included the potential for physical confinement.

From 2016 to 2017, RCW 28A.225.090(1)(f) allowed the court, following the initial truancy hearing, to order the child to reside at a crisis residential center.[22] A "crisis residential center" is "a secure or semi-secure facility established pursuant to chapter 74.13 RCW."[23] The district does not dispute that placement in a crisis residential center would constitute physical confinement. But A.J.L. was neither placed in a crisis residential center nor at risk of being placed in one without a hearing where he could subpoena or call witnesses. Even if the risk of confinement in this context is viewed as a compelling privacy interest, the two remaining due process factors do not mandate an evidentiary hearing.

*b. Risk of Erroneous Deprivation*

A.J.L. argues the entry of a truancy order by default creates a substantial risk that children will be erroneously denied their physical liberty. His argument is not compelling.

---

[22] LAWS OF 2016, ch. 205, § 9 (effective June 9, 2016); see also LAWS OF 2017 ch. 291, § 5 (effective July 23, 2017) (removed this provision from RCW 28A.225.090(1), although .090(2)(b) continues to include the possible remedy of detention, preferably at a secure crisis residential center close to home rather than a juvenile detention facility at later stages of a truancy matter).

[23] RCW 13.32A.030(7).

Here, A.J.L. received notice and had the opportunity to appear at all hearings. A.J.L. was represented by counsel at each hearing. He had the opportunity to subpoena or call witnesses and present evidence contradicting the statements in the petition. A.J.L. chose not to appear at the April 20 hearing before the commissioner or the May 17 hearing before the judge. He did not subpoena or call any witnesses. He did not offer evidence. A party's decision not to avail themselves of the procedures available to them does not establish a due process violation.[24] Both the commissioner and the judge on revision reviewed the petition and found the necessary elements had been established by a preponderance of the evidence. The judge did not rely on a default. The judge reviewed and discussed with A.J.L.'s attorney the contents of the petition, including the number of unexcused absences,[25] the referral to the truancy board, and other details.

Moreover, A.J.L.'s counsel was given an opportunity to make an offer of proof as to any questions he would have asked or any objections he would have made. He did not identify any specific questions he would have asked or specific evidence he would have offered. His objections focused on the lack of an

---

[24] See In re Dependency of A.G., 93 Wn. App. 268, 279, 968 P.2d 424 (1998), as amended on reconsideration, (Feb. 1, 1999) (holding no due process violation in termination of parental rights when parent had notice but chose not to appear); see also Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate.")

[25] The attorney admitted the absences were unexcused.

opportunity to cross-examine witnesses for the district and the procedure used by the commissioner.

Alternatively, A.J.L. argues that the right to counsel is meaningless in the absence of an evidentiary hearing. But the statute does not require live testimony, it requires a "hearing."[26] Our legislature has used the term "evidentiary hearing" when it so intends.[27] Statutes are presumed constitutional, and the "challenger has a heavy burden to overcome that presumption; the challenger must prove that the statute is unconstitutional beyond a reasonable doubt."[28]

Here, A.J.L. does not establish that the procedure used placed A.J.L. at risk of an erroneous deprivation of his private interest.[29] The petition set forth the information required by statute under penalty of perjury. A.J.L.'s attorney could have presented A.J.L.'s version of events at the hearing and subpoenaed witnesses to testify, but he did not.

---

[26] RCW 28A.225.035.

[27] See, e.g., RCW 74.34.135 (providing for evidentiary hearings related to protection of vulnerable adults); RCW 88.04.055 (allowing for evidentiary hearings under certain circumstances under the Charter Boat Safety Act).

[28] Sch. Dists.' All. for Adequate Funding of Special Educ. v. State, 170 Wn.2d 599, 605, 244 P.3d 1 (2010).

[29] See City of Bellevue v. Lee, 166 Wn.2d 581, 587, 210 P.3d 1011 (2009).

### c. Governmental Interest

Under the third Mathews factor, we consider the government's interest, including the fiscal and administrative burden of providing additional procedural requirements.[30]

Our legislature has recognized the importance of the State's interest in ensuring regular school attendance.[31] Generally, our courts have acknowledged the State's interest in keeping costs and administrative burdens associated with additional procedures low.[32] There is also a governmental interest in preventing additional procedures from becoming unnecessarily costly and confusing.[33]

Here, adding a mandatory evidentiary hearing for every initial truancy hearing would require school district employees to appear and repeat the same information already provided in the truancy petition signed under penalty of perjury. Producing these witnesses for each and every truancy hearing would take school employees away from school even if there is no dispute over unexcused absences or the steps taken by the school district contemplated by the statute. Court resources would also be impacted. Limiting live testimony to those occasions where the student or district subpoenas or calls witnesses is consistent

---

[30] Mathews, 424 U.S. at 348.

[31] See generally ch. 28A.225 RCW.

[32] See State v. Derenoff, 182 Wn. App. 458, 467, 332 P.3d 1001 (2014) ("[T]he governmental interest, including costs and administrative burdens of additional procedures [ ] weighs heavily in favor of the State.").

[33] State v. Beaver, 184 Wn. App. 235, 250, 336 P.3d 654 (2014).

with avoiding unnecessary and costly procedures.

We conclude the factors articulated by the United States Supreme Court in

Mathews v. Eldridge, together with the express language of chapter 28A.225

RCW, do not support a mandatory evidentiary hearing. A.J.L. has not established

a procedural due process violation.

Therefore, we affirm.

WE CONCUR:

Trickey, J